James M. Blucker, Esq. (#311340)
Law Office of James M. Blucker
3800 E. Concours St., Suite 300
Ontario, CA 91764
Phone: (909) 684-5454
Email: info@bluckerlaw.com

Attorney for Plaintiffs Circle Inn
Development & Management, Inc.,
a California corporation;
National Association of Real Sales
People, Inc., a California corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Circle Inn Development & Management, Inc., a California corporation; National Association of Real Sales People, Inc., a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> Global Signal Acquisitions IV LLC, a Delaware limited liability company; Crown Castle Towers 06-2 LLC, a Delaware limited liability company; and Does 1-50, inclusive, <br><br> Defendants. | Case No.: 5:21-cv-02061-JWH-SHK <br><br> [Removal from Superior Court of California, Riverside County Case No. CVRI2104692] <br><br> **PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR:** <br><br> 1. **BREACH OF CONTRACT** <br> 2. **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING** <br> 3. **INTENTIONAL MISREPRESENTATION** <br> 4. **NEGLIGENT MISREPRESENTATION** <br> 5. **FRAUD & DECEIT** <br> 6. **UNFAIR COMPETITION (VIOLATION OF CAL. BUS. & PROF. CODE § 17200)** <br> 7. **NEGLIGENCE** <br><br> State Action Filed: October 14, 2021 |

-1-

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT

Plaintiffs, Circle Inn Development & Management, Inc., a California corporation; National Association of Real Sales People, Inc., a California corporation (hereinafter "Plaintiffs") alleges as follows:

## PARTIES

1.     Plaintiff, Circle Inn Development & Management, Inc. a California corporation ("Circle") is an active business entity corporation lawfully formed in California with its principal place of business in Jurupa Valley in the County of Riverside, State of California.

2.     Plaintiff, National Association of Real Sales People, Inc., a California Corporation ("Real") is an active business entity corporation lawfully formed in California with its principal place of business in Jurupa Valley in the County of Riverside, State of California.

3.     Plaintiff  Circle and Plaintiff Real are collectively referred to as "Plaintiffs" throughout the First Amended Verified Complaint.

4.     Plaintiffs are informed and believe, and on that basis, alleges that Defendant Global Signal Acquisitions IV LLC, a Delaware limited liability company ("Global") is a Delaware formed entity limited liability company operating and actively doing business in the County of Riverside, State of California.

5.     Plaintiffs are informed and believe, and on that basis, alleges that Defendant, Crown Castle Towers 06-2 LLC, a Delaware limited liability company ("Crown") is a Delaware formed entity limited liability company operating and actively doing business in the County of Riverside, State of California.

6.     Defendant's Global and Crown are collectively referred to as "Defendants" throughout the First Amended Verified Complaint.

7.     Plaintiffs are ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein as DOES 1 through 50 inclusive, and therefore sues said Defendants by such fictitious

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT

names.  Plaintiff will amend this Complaint to allege their true names and capacities when the same have been ascertained.

8.     At all times herein mentioned each of the Defendants was the agent, employee, partner, principal, representative, alter ego, and/or affiliate of each of the remaining Defendants and, was at all times herein mentioned, acting within the course and scope of such relationship.  Moreover, at all times herein mentioned, each of the Defendants did confirm, conspire to, consent to, affirm, direct, authorize, acknowledge, and ratify the acts of each and every of the Defendants herein as to each of the acts hereinafter alleged.

## INTRODUCTION AND FACTUAL ALLEGATIONS

9.     Plaintiffs' cause of action in this case arises from an Option and Ground Lease Agreement ("Agreement") wherein Plaintiffs agreed to grant Defendants an option to lease a portion of Plaintiffs' real property for a 30-year period to construct and operate a wireless communications facility. This agreement was duly executed by all parties during the month of May 2018. (Exhibit 1)

10.     Prior to executing the Agreement, Plaintiffs had been advertising the premises on the open real estate market and were ecstatic to find a long-term suitable tenant that could occupy the premises for the next 30 years. Plaintiffs had made it known to Defendants they looked forward to doing business for many years to come. At the time of signing the Agreement, Defendants knowing that Plaintiffs were expecting a business relationship at least for the next 30 years, warranted that the Leased Premises and the Easements shall be used for the purpose of "(i) constructing, maintaining, and operating the Improvements" – whereas, Improvements were defined as, "a wireless communications facility, including tower structure, equipment shelters, meter boards and related improvements and structures and uses incidental thereto."

11.     After the Agreement was duly executed, Defendants had the Option to exercise and continue the Contract by giving notice of its intent to proceed no later

than August 31, 2018. During this due diligence period, Defendants had the full right and authority to conduct any of its inspections, perform tests and apply for and obtain all needed permits from the applicable government agencies to determine the feasibility and suitability of the property for Defendants use for construction of a cell tower. This included filing for any zoning. Plaintiff agreed to cooperate with any filings made by the Defendant with the City.

12.     The Defendants performed its environmental reports and concluded that the Property was suitable for its needs and exercised its Option by way of a recorded notice of exercise on June 19, 2018, at which time the Lease was effective and easements were recorded. (Exhibit 1) By exercising the Option, Defendant's promises and covenants that they would build the Improvements that the Agreement stated caused Plaintiffs to withdraw the Premises from the open rental market from seeking other prospective long-term suitable tenants.

13.     On July 28, 2018, Grace Henry an employee with apparent authority to conduct business on behalf of Defendants pertaining to the Agreement, e-mailed Plaintiffs and communicated, "We [Defendants] will be filing for zoning within the next couple weeks. We will also be executing the lease at the end of August, so you two will be receiving the rent check starting in September." (Exhibit 2) This e-mail chain also carbon-copied Rick Goetz, upon information and belief – Grace Henry's supervisor also an employee of Defendants with apparent authority to act on behalf of Defendants and whom had knowledge of the Agreement. This e-mail further evidenced Defendants' purported good faith promises that they would honor the provisions within the Agreement leading to building the Improvements.

14.     From that point and throughout the next two years, Plaintiffs had contacted Defendants regarding status and visited the premises and noticed it had appeared that no substantial work had been commenced by Defendants on the Improvements agreed upon. Although Defendants continued to represent they were in the process of commencing Improvements, Plaintiffs became concerned that no

workmanship activity was occurring on the premises. Thereafter, Plaintiff's contacted the City of Jurupa Valley and determined that Defendants had never filed for any zoning, sought out any permits or completed any regulatory/environmental studies – substantial work towards completing the construction of Improvements as indicated in the Agreement, in a July 28, 2018 e-mail correspondence on behalf of Defendants, and a November 5, 2019 e-mail correspondence on behalf of Defendants.

15.     Plaintiffs surmised from Defendant's stagnant acts that lasted over two years, that at the time the Agreement was duly executed and the Option was exercised by way of a recorded notice of exercise on June 19, 2018; and thereafter on July 28, 2018 Defendant's agent with apparent authority representing to Plaintiffs that they were going to be filing for zoning within a few weeks, Defendant's never had the intent to filing for any zoning, sought out any permits, or complete the construction of Improvements as represented and warranted to Plaintiffs. This continued for the next year as Defendants continually communicated to Plaintiffs that they were still in the "due diligence" phase and conducting "regulatory/environmental studies" before Improvements could occur. When Plaintiffs inquired by writing to Defendants as to the status of filing for any zoning, pulling permits, or when the Improvements would be completed at the premises, Plaintiffs were caught off guard and ultimately surprised to receive a termination notice from Defendants general counsel during the month of May 2021.

16.     Plaintiffs fully performed its covenants and obligations under the Agreement, whereas Defendant's acts of never filing for any zoning (despite warranting they would be), never pulling any permits, conducting any regulatory/environmental studies or performing any substantial work towards completing the Improvements conveyed that Defendants never acted in good faith from the commencement of the Agreement, when the Option was exercised June 19, 2018 and July 28, 2018 when Defendants continued to warrant they were in the

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT

process of filing for zoning and conducting any regulatory/environmental studies.

17.     Defendants did not materially disclose to Plaintiffs their intent of never pulling any zoning, pulling any permits, conducting any regulatory/environmental studies or perform any construction work of Improvements when the Agreement was executed, afterwards when the Option was exercised on June 19, 2018 and further on July 28, 2018 when Defendants agent with apparent authority misrepresented to Plaintiffs that they would be filing for zoning "within the next couples weeks" and November 5, 2019 when Defendants misrepresented to Plaintiffs they were currently working through their regulatory/environmental studies – however thereafter, Plaintiffs discovered none of these representations never ultimately occurred. Based on all of Defendant's acts – Defendants only wanted to contract with Plaintiffs to hold the premises "hostage" at a low fixed rental rate with a low 4% rental increase each year that was supposed to last 30 years, all while Plaintiffs later discovered that Defendants sought out other nearby properties to lease which Defendants would actually utilize in a similar matter to the Agreement entered into between Plaintiffs and Defendants.

18.     Rental rates in the area of where the premises is situated had drastically risen in the two and half years since the Agreement was executed and Option was exercised, more than what the Agreement had stated along with the low 4% rental increase each year. Had Plaintiffs known that Defendants were never going to perform to the Agreement and actually not file for any zoning, pull any permits or construct any Improvements, Plaintiffs could have kept the premises on the open real estate market and continued to look for a suitable long-term tenant at the increased comparable market rental rates that existed throughout the past two, plus years.

19.     Pursuant to Paragraph 31 of the Agreement, Plaintiffs' counsel had attempted to confer with Defendants' general counsel, Adam Barsotti on September 13, 2021 and compel AAA Arbitration between the parties pursuant to the

Agreement, however Defendant's general counsel did not respond to this request.

20.     Plaintiffs, unable to unilaterally commence arbitration proceedings through AAA without Defendants agreeing to arbitrate, filed the instant action in California State Court, Superior Court of California County of Riverside, on October 14, 2021. Defendants were personally served by their corporate agent on November 8, 2021, and Defendants thereafter filed a notice of removal to this Court on December 9, 2021 – 31 days after being served the Summons and Complaint. On February 22, 2022, this Court ultimately ruled that this action be ordered to Court Mediation Panel for mediation and that the ADR proceeding to be held no later than November 18, 2022. Plaintiffs are in the process of obtaining consent of a neutral on the Court Mediation Panel and conferring with Defendant's counsel on selection of a neutral.

## JURISDICTION AND VENUE

21.     This Court has original jurisdiction of Defendants and venue is proper under 28 U.S.C. §§§1332; 1391; 1965(a). Complete diversity of citizenship exists between the parties and the amount of controversy exceeds $75,000, exclusive of interest and costs.

## FIRST CAUSE OF ACTION

(Breach of Contract – Against All Defendants)

22.     Plaintiffs reallege and reincorporate by reference all paragraphs above, as though fully set forth in this paragraph.

23.     Under California law, the elements of a cause of action for breach of contract are: (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff. *See Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830, 69 Cal.Rptr. 321, 442 P.2d 377.

24.     On or about May 31, 2018, Plaintiffs Circle and National, as the

landlord and Defendant Global entered into a binding contract for the Option and Ground Lease Agreement, whereby Plaintiffs agreed to lease and Defendant agreed to rent for a period of thirty (30) years an approximately fifty (50) feet by fifty (50) feet parcel of land located in Jurupa Valley, County of Riverside, State of California identified as APN 173-153-009.

25.     On or about June 19, 2018, Defendant Global provided notice to Plaintiffs Circle and National of its notice of intent to exercise the option and ground lease and thereafter recorded such notice as document # 2019-0267431 in the official records of the County of Riverside, State of California. The documents comprising the parties' documents are as follows: Option and Ground Lease Agreement dated May 31, 2018 and the Exercise of the Option dated June 19, 2018 (the "Contract"), attached as Exhibit 1 and incorporated by this reference. This evidenced the existence of a contract between the parties and Plaintiff's performance by offering to lease to Defendants, an approximately fifty (50) feet by fifty (50) feet parcel of land to rent for a period of thirty (30) years.

26.     Thereafter within the next month from June 19, 2018 to July 28, 2018 on information and belief, Defendant Global transferred and assigned its rights into the Contract to Defendant Crown.

27.     According to the Agreement, Defendants were to comply with Paragraph 11, **Use of Property** which identified Improvements in Paragraph 1. The Agreement states as follows:

1.     <u>Definitions.</u>   *"**"Improvements" means a wireless communications facility, including tower structure, equipment shelters, meter boards and related improvements and structures and uses incidental thereto."***

11.   <u>Use of Property</u> "***The Leased Premises and the Easements shall be used for the purpose of (i) constructing, maintaining, and operating the Improvements …***"

28.   The Leased Premises **shall be used** for the purpose of (i) constructing maintaining and operating the Improvements. All actions from Defendants evidenced Defendants did not construct the Improvement or otherwise known as the cell tower during the two year period after the Agreement and Option were executed.

29.   Defendant never intended to construct any Improvements at the time the Option was executed or shortly thereafter when Defendant's agent with apparent authority communicated on July 28, 2018 that Defendants were filing for zoning permits in the "next few weeks" thereafter, thus establishing the timeline when the breach occurred. Generally speaking, a cause of action for breach of contract accrues at the time of the breach. *Abbott v. 76 Land & Water Co.* (1911) 161 Cal. 42, 47—49, 118 P. 425; *Van Horne v. Treadwell* (1913) 164 Cal. 620, 622—623, 130 P. 5; *Coughlin v. Blair* (1953) 41 Cal.2d 587, 598, 262 P.2d 305; see 4 Corbin on Contracts, 946.) Over the next year, Defendants continued to represent to Plaintiffs that they were in the process of working through their regulatory/environmental studies before commencing the Improvements.

30.   Plaintiffs' basis for entering into the Agreement with Defendants was for them to lease the premises and construct and operate a cell tower on the property of Plaintiffs. From these actions describe above, Plaintiffs have demonstrated that they entered into a Contract with Defendants – the existence of a contract; that Plaintiffs performed to the contract – Plaintiffs performed by allowing the premises be exclusively available for only the Defendants for the intended purpose of constructing Improvements; Defendant's breached – Defendant's breached by not constructing any Improvements whatsoever after exercising the Option and had

even mispresented that they were in the process of filing for zoning and conducting regulatory/environmental studies when no actions by Defendants evidenced any type of zoning filing or conducting regulatory/environmental studies whatsoever; which has led to the Plaintiff suffering damages – Plaintiff is out compensatory damages they were to expect to receive throughout the 30 year tenancy had Defendants made any improvements as promised when leasing the premises.

31.     As a direct, foreseeable, and proximate result of Defendant's breach of the Agreement, Plaintiffs have suffered damages, and been damaged and continues to be damaged in an amount to be determined at trial, but not less than two-million United States of America dollars ($2,000,000.00), plus interest. Additionally, as a result of the breach by Defendants of the Agreement, Plaintiff has incurred legal fees and costs.  Plaintiff reserve the right to amend this Complaint to state the true nature and extent of its damages when ascertained or at time of trial.

## SECOND CAUSE OF ACTION

(Breach of Covenant of Good Faith and Fair Dealing – Against All Defendants)

32.     Plaintiffs reallege and reincorporate by reference all paragraphs above, as though fully set forth in this paragraph.

33.     Under California law, an action for breach of the implied covenant of good faith and fair dealing requires an underlying agreement of some sort (contract, letter of intent, preliminary agreement to use best efforts to agree, etc.). *Racine v. Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026. Plaintiffs and Defendants duly entered into an Agreement as stated above.

34.     "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement*." Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198], internal citation omitted. A breach of

the implied covenant of good faith and fair dealing involves "something beyond breach of the contractual duty itself." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (1990) (internal quotation marks omitted). The allegations must show "that the conduct of the defendant … demonstrates a failure or refusal to discharge contractual responsibilities … by a conscious and deliberate act." *Id.* at 1395. The covenant is implied by law in every contract and supplements the express contractual obligations "to prevent a contracting party from engaging in conduct which … frustrates the other party's rights to the benefits of the contract." *Thrifty Payless, Inc. v.  Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1244 (2013) (internal quotation marks omitted).

35.     The covenant imposes on each party to the contract the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, and also the duty to do everything that the contract presupposes that each party will do to accomplish its purpose. *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49.

36.     Good faith is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing." *California Commercial Code* § 1201(20) The duty of good faith and fair dealing applies to both the performance and the enforcement of the contract. *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342. Bad faith in the performance of a contract may be overt or may consist of inaction and may exist even if the actor believes his conduct is justified. Fair dealing may require more than honesty. *Jacobs v. Tenneco W.* (1986) 186 Cal.App.3d 1413.

37.     Plaintiffs did all, or substantially all of the significant things that the Contract/Agreement required them to do.

38.     That all conditions required for Defendant's performance had Occurred when they exercised the Option.

39.     That Defendants conduct at the time the Agreement commenced,

thereafter when the Option was exercised, and shortly thereafter when Defendant's agent with apparent authority falsely communicated and misrepresented to Plaintiffs that Defendants were in the process of filing for zoning "within the next couple weeks" and thereafter for the next year claiming that Defendants were in the process of their due diligence of conducting regulatory/environmental studies when that was never the case, even years later – all showing inaction and bad faith on the part of the Defendants whom communicated that their actions were justified – led to Defendant's arbitrarily providing a notice of cancellation of the Agreement almost 3 years later; ultimately prevented Plaintiffs from receiving the financial benefits under the contract/Agreement of what was supposed to be a 30-year term because of Defendant's egregiously bad faith that existed since the commencement of the Agreement.

40.     That by doing so, Defendants did not act fairly and in good faith at any point when the Agreement was executed, the Option was exercised, and thereafter when Defendant's agent with apparent authority continued to falsely communicate and misrepresent to Plaintiffs that Defendants were in the process of constructing Improvements by filing for zoning "within the next couple weeks" and still conducting "regulatory/environmental studies" over a year alter – Thus, Defendants failed and refused to discharge their contractual responsibilities through conscious and deliberate acts to frustrate their contractual agreement with Plaintiffs.

41.     Had Plaintiffs knew Defendant's true intentions at the time the Agreement commenced, or when the Option was exercised, or thereafter even when Defendants continued to falsely communicate and misrepresent for Defendants never taking any steps whatsoever to file for zoning, seeking out any permits, conducting any actual due diligence of conducting regulatory/environmental studies or completing any substantial work towards completing the construction of Improvements as indicated in the Agreement – Plaintiffs would not have entered

into the Agreement at all. Defendants simply negotiated in bad faith since the commencement of the Agreement, when the Option was exercised thereafter and continued when Defendants on repeated occasions, misrepresented to Plaintiffs that they were in the process of filing for zoning permits and in the process of conducting regulatory/environmental studies, when none of these actions occurred at all.

### **THIRD CAUSE OF ACTION**

(Intentional Misrepresentation – Against All Defendants)

42.     Plaintiffs reallege and reincorporate by reference all paragraphs above, as though fully set forth in this paragraph.

43.     After the Agreement was duly executed, and thereafter when Defendants exercised the Option, Defendants made the following intentional representations by e-mail through their agent Grace Henry, whom had apparent authority to Plaintiffs, on which Plaintiffs relied to its detriment:

> "Bob it was nice to speak with you yesterday. I wanted to follow up the phone call. We will be filing for zoning within the next couple weeks." (July 28, 2018 e-mail – Exhibit B)

44.     Thereafter, as Plaintiffs continued to inquire about the status of Improvements being made, Defendants continued to made the following intentional misrepresentations by e-mail through their agent Grace Henry, whom had apparent authority to Plaintiffs, on which Plaintiffs relied to its detriment:

> "As we discussed, Crown has to run through due diligence processes before any construction can occur. We are currently working through our regulatory/environmental studies." (November 5, 2019 email – Exhibit C)

45.     When Plaintiffs received a notice of cancellation from Defendants in May 2021, Plaintiff contacted the City of Jurupa Valley and determined that Defendants had never pulled any zoning permits, any other permits or conducted any regulatory/environmental studies at any point when the Agreement was executed or shortly thereafter when the Option was exercised by Defendants.

46.     After the Agreement was executed and the Option was thereafter recorded, Defendants had no intention of following the terms of Paragraph 11 of the Agreement – "***The Leased Premises and the Easements shall be used for the purpose of (i) constructing, maintaining, and operating the Improvements …***" despite misrepresenting to Plaintiffs that they were in the process of constructing Improvements.

47.     Defendants knew, that at the time of the commencement of the Agreement, when the Option was exercised, and when Defendant's agent with apparent authority continued to falsely communicate and misrepresent to Plaintiffs that they were in the process of constructing improvements by way of filing for zoning "in next few weeks" and were in the process of due diligence conducting regulatory/environmental studies – knew that those intentional misrepresentations were false and made these representations with the intention to induce Plaintiffs to act in reliance on these representations.

48.     Instead, Defendants only wanted to contract with Plaintiffs to hold the premises "hostage" at a low fixed rental rate with a low 4% rental increase each year that was supposed to last 30 years, all while Plaintiffs later discovered that Defendants sought out other nearby properties to lease which Defendants would actually utilize in a similar matter to the Agreement entered into between Plaintiffs and Defendants.

49.     In doing the acts herein alleged, Defendants by and through their agent with apparent authority acted with oppression, fraud, and malice, and Plaintiffs are entitled to punitive damages.

### **FOURTH CAUSE OF ACTION**

(Negligent Misrepresentation – Against All Defendants)

50.      Plaintiffs reallege and reincorporate by reference all paragraphs above, as though fully set forth in this paragraph.

51.      After the Agreement was duly executed in May 2018, and thereafter when Defendants exercised the Option in June 2018, one month later on July 28, 2018 Defendants made the following representations by e-mail through their agent Grace Henry, whom had apparent authority to Plaintiffs, on which Plaintiffs relied to its detriment:

"Bob it was nice to speak with you yesterday. I wanted to follow up the phone call. We will be filing for zoning within the next couple weeks."

52.      Thereafter, as Plaintiffs continued to inquire about the status of Improvements being made, Defendants continued to made the following intentional misrepresentations by e-mail through their agent Grace Henry, whom had apparent authority to Plaintiffs, on which Plaintiffs relied to its detriment:

"As we discussed, Crown has to run through due diligence processes before any construction can occur. We are currently working through our regulatory/environmental studies." (November 5, 2019 email – Exhibit C)

53.       However, Defendants had no intention of pulling zoning permits, seeking out any other permits, coordinating any due diligence by conducting any regulatory/environmental studies or complete any substantial work towards completing the construction of Improvements as indicated in the Agreement and Option. When Defendant's agent with apparent authority made the misrepresentation that they were going to file for zoning and were purportedly in

the process of due diligence by conducting regulatory/environmental studies when that never occurred; it ultimately showed that Defendants never acted in good-faith and at all times believed it would do whatever it wanted. This is further evidenced that in the last two and a half years, Defendants never sought any zoning permits, any other permits, conducted any regulatory/environmental studies or commenced substantial work towards completing the construction of Improvements.

54.     Due to the continued negligent misrepresentations made by Defendant's Agent Grace Henry who had apparent authority, that Defendants would pull zoning permits after the Agreement and Option was exercised, and that Defendants were purportedly in the due diligence phase of conducting regulatory/environmental studies, Plaintiffs are entitled to compensatory damages, legal fees, and costs.

## **FIFTH CAUSE OF ACTION**

### (Fraud & Deceit – Against All Defendants)

55.     Plaintiffs reallege and reincorporate by reference all paragraphs above, as though fully set forth in this paragraph.

56.     Under California law, the elements of a cause of action for fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974; *see also Molko v. Holy Spirit Ass'n* (1988) 46 Cal.3d 1092, 1108.

57.     Plaintiffs' basis for entering into the Agreement with Defendants Was for them to lease the premises and construct and operate a cell tower on the property of Plaintiffs, which would lead to a 30-year tenancy. This was directly communicated from Plaintiffs to Defendants prior to the Agreement being executed. Defendants knowing this basis – misrepresented, concealed and did not disclose their true motive of only wanting to contract with Plaintiffs to hold the

premises "hostage" at a low fixed rental rate with a low 4% rental increase each year that was supposed to last 30 years, all while Defendants sought out other properties to lease which they would actually utilize in a similar matter as to the purpose of the Agreement executed and did not disclose this to Plaintiffs.

58.     Defendants not only negotiated in bad faith, but misrepresented, concealed and did not disclose their bad faith position to Plaintiffs prior to the Agreement being executed, after the Agreement was executed and thereafter after Option was exercised, thereby defrauding Plaintiffs and inducing reliance on Plaintiffs to contract.

59.     Defendants false representations, concealment, and non-disclosure of their bad faith position continued when Defendant's agent with apparent authority misrepresented to Plaintiffs on multiple occasions that they would be filing for zoning "within the next couple weeks" and were in the process of their due diligence phase "conducting regulatory/environmental studies" – all evidencing Plaintiff's justifiable reliance that Defendants would perform to the Agreement, all while Defendants were aware of Plaintiffs' basis for entering into the Agreement with Defendants in the first place.

60.     A party seeking relief from intentional deceit/fraud must prove that [they] actually relied on the defendant's misrepresentation. Actual reliance occurs when a misrepresentation is an immediate cause of plaintiff's conduct and which, absent such representation, he would not have engaged in the activity in all probability. *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244. Reliance may be proven by circumstantial evidence, as well as by direct evidence. The law will presume reliance when representations have been made and action taken thereafter. *McAdams v. Monier, Inc.* (2010) 182 Cal.App.4th 174. It's important to note that a single false representation as to a material fact made with the intent to defraud and relied upon by another party supports an action for fraud.

*Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821.

61.     After the Agreement was executed, the Option was exercised, and further when Defendant's agent with apparent authority continued to state they were performing to the Agreement by pulling zoning permits in the next few weeks, and thereafter over a year later when Defendants falsely represented they were in the due diligence phase by conducting regulatory/environmental studies – Plaintiffs continued to rely on Defendants' representations that Defendants would perform as Defendants knew all along Plaintiffs' basis for entering into the Agreement with Defendants. Plaintiffs' reliance on Defendants' representations is not just circumstantial evidence, but is backed up by direct evidence – Defendant's agent with apparent authority's misrepresentations to Plaintiffs by her e-mails. Plaintiffs conduct at that point when the misrepresentations; concealments and nondisclosures were made, were the immediate cause of Plaintiff's conduct in continuing the Agreement and which, absent such misrepresentations; concealments; and nondisclosures made by Defendant's agent with apparent authority to Plaintiffs, Plaintiffs would not have further engaged in the activity in all probability.

62.     Plaintiffs ultimately discovered that no zoning permits were pulled, no other permits were pulled, no actual due diligence of conducting regulatory/environmental studies were performed, and that no construction of Improvements had yet commenced during a two and a half year to three-year period after the Agreement was executed – Plaintiffs inquired with Defendants as to the multiple misrepresentations made by Defendants agent with apparent authority, and thereafter received a notice of cancellation from Defendants when Plaintiffs discovered none of Defendants representations never ultimately occurred at any point.

63.     A misrepresentation must be of a material fact, essential to the

analysis undertaken by the plaintiff and such that the plaintiff would not have acted as he did without it. (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105.) The fact represented or suppressed is deemed material if it relates to a matter of substance and directly affects the purpose for which the deceived party acted. (*In re Marriage of Goodwin-Mitchell & Mitchell* (2019) 40 Cal.App.5th 232.)

64.     The resulting damages: Had Plaintiffs known that Defendants were never going to perform to the Agreement and not construct any Improvements, Plaintiffs could have kept the premises on the open real estate market and continued to look for a suitable long-term tenant at the increased comparable market rental rates that existed throughout the past two, plus years. Plaintiffs were supposed to receive at least a two million dollar ($2,000,000.00) benefit of a contract expected to last 30-years. This would be vital for when discovery commences.

65.     In the acts herein alleged, Plaintiffs have sustained at the very least compensatory damages. When fraudulent deceit occurs, the Defendants are liable to the plaintiff "for any damage which he thereby suffers." *California Civ. Code* § 1709. However, damage recovery is limited to those consequences that the defendant could reasonably foresee when making the misrepresentation. *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168. Plaintiffs, as a "recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him …. (a) the difference between the value of what he or she has received in the transaction and its purchase price or other value given for it; and (b) pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the misrepresentation." *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835.

66.     In the acts herein alleged, Defendants also acted with oppression,

fraud, malice, thereby entitling Plaintiffs to punitive damages.

## SIXTH CAUSE OF ACTION

(Unfair Competition (Violation of Cal. Bus. & Prof. Code § 17200)

– Against All Defendants)

67.     Plaintiffs reallege and reincorporate by reference all paragraphs above, as though fully set forth in this paragraph.

68.     Defendant's conduct as alleged herein constitutes unlawful, unfair, or fraudulent business acts or practices in violation of California Business and Professions Code § 17200 et seq.

69.     Unless Defendants are restrained from continuing these unlawful, unfair, and fraudulent business acts or practices Plaintiffs will suffer irreparable harms and injuries.

70.     As a direct and proximate result of the foregoing conduct, Defendants have been unjustly enriched. Plaintiffs are entitled to full disgorgement of all profits obtained by Defendants as a result of their unlawful, unfair, and fraudulent acts as alleged herein.

## SEVENTH CAUSE OF ACTION

(Negligence – Against All Defendants)

71.     Plaintiffs reallege and reincorporate by reference all paragraphs above, as though fully set forth in this paragraph.

72.     Defendants, including their own agents with apparent authority owed Plaintiffs a duty of care after the Agreement was executed.

73.     Defendants, and each of them breached their duty owed to Plaintiffs.

74.     Based on the negligence of Defendants, and each of them, Plaintiffs were harmed.

75.     The negligence of Defendants, and each of them, was a substantial factor in causing Plaintiffs harm.

WHEREFORE, Plaintiffs pray for relief as follows:

1.      For compensatory damages according to proof at the time of trial;

2.      For general damages according to proof;

3.      For punitive and exemplary damages according to proof;

4.      For legal interest on said sums;

5.      Attorneys' fees and costs to the extent permitted by law;

6.      Costs of suit herein incurred as provided by law;

7.      For such other and further relief as the Court deems just and proper against all Defendants.


DATED: March 8, 2022                    Law Office of James M. Blucker


                                        By: */s/ James M. Blucker*

                                        James M. Blucker
                                        Attorney for Plaintiffs Circle Inn
                                        Development & Management, Inc.,
                                        a California corporation;
                                        National Association of Real Sales
                                        People, Inc., a California
                                        corporation

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT

## __VERIFICATION__

I, Robert Fred Newsom Jr., am the President/CEO of Plaintiff, Circle Inn Development & Management, Inc., a California corporation. I hereby verify and declare under penalty of perjury that I have read the foregoing First Amended Verified Complaint and know of its contents thereof, and that the matters contained in the First Amended Verified Complaint are true to the best of my knowledge, information, and belief.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Date: March 8, 2022

_____
Robert Fred Newsom Jr.
on behalf of Plaintiff, Circle
Inn Development &
Management, Inc., a California
Corporation

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **VERIFICATION**

I, Robert Fred Newsom Jr., am the President/CEO of Plaintiff, National Association of Real Sales People, Inc., a California corporation. I hereby verify and declare under penalty of perjury that I have read the foregoing First Amended Verified Complaint and know of its contents thereof, and that the matters contained in the First Amended Verified Complaint are true to the best of my knowledge, information, and belief.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Date: March 8, 2022

_____

Robert Fred Newsom Jr.
on behalf of Plaintiff, National
Association of Real Sales
People, Inc., a California
corporation

# EXHIBIT A



**OPTION AND GROUND LEASE AGREEMENT**
**STATE OF CALIFORNIA**

**THIS OPTION AND GROUND LEASE AGREEMENT** (the "Agreement") is made as of the date of the final signature below, by and between CIRCLE INN DEVELOPMENT & MANAGEMENT, INC., a California corporation, as to an undivided one-half interest; and NATIONAL ASSOCIATION OF REAL ESTATE SALES PEOPLE, a California corporation, as to an undivided one-half interest ("Lessor") and GLOBAL SIGNAL ACQUISITIONS IV LLC, a Delaware limited liability company ("Lessee").

1. **Definitions**.

"Agreement" means this Option and Ground Lease Agreement.

"Approvals" means all certificates, permits, licenses and other approvals that Lessee, in its sole discretion, deems necessary for its intended use of the Leased Premises.

"Commencement Date" means the first day of the month following the month in which the Option is exercised pursuant to Section 4(B) of this Agreement.

"Defaulting Party" means the party to this Agreement that has defaulted as provided for in Section 28 of this Agreement.

"Due Diligence Investigation" has the meaning set forth in Section 3 of this Agreement.

"Easements" and "Utility Easement" have the meanings set forth in Section 9 of this Agreement.

"Hazardous Material" means any substance which is (i) designated, defined, classified or regulated as a hazardous substance, hazardous material, hazardous waste, pollutant or contaminant under any Environmental Law, as currently in effect or as hereafter amended or enacted, (ii) a petroleum hydrocarbon, including crude oil or any fraction thereof and all petroleum products, (iii) PCBs, (iv) lead, (v) asbestos, (vi) flammable explosives, (vii) infectious materials, or (viii) radioactive materials. "Environmental Law(s)" means the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. Sections 9601, et seq., the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Sections 6901, et seq., the Toxic Substances Control Act, 15 U.S.C. Sections 2601, et seq., the Hazardous Materials Transportation Act, 49 U.S.C. 5101, et seq., and the Clean Water Act, 33 U.S.C. Sections 1251, et seq., as said laws have been supplemented or amended to date, the regulations promulgated pursuant to said laws and any other federal, state or local law, statute, rule, regulation or ordinance which regulates or proscribes the use, storage, disposal, presence, clean-up, transportation or release or threatened release into the environment of Hazardous Material.

"Improvements" means a wireless communications facility, including tower structures, equipment shelters, meter boards and related improvements and structures and uses incidental thereto.

"Lease Term" means a period of thirty (30) years following the Commencement Date.

"Leased Premises" means that portion of Lessor's Property consisting of a parcel of approximately fifty (50) feet by fifty (50) feet, as described in the sketch attached hereto as **Exhibit "B"**. The boundaries of the Leased Premises may be subject to modification as set forth in Section 8.

"Lessee's Notice Address" means c/o Crown Castle USA Inc., General Counsel, Attn: Legal – Real Estate Dept., 2000 Corporate Drive, Canonsburg, PA 15317-8564, 1-866-482-8890.

"Lessor's Notice Address" means 41396 Bitter Creek Court, Temecula, California 92591-1545 C020, Phone; (951) 695-0098.

"Lessor's Property" means the parcel of land located in the Jurupa Valley, County of Riverside, State of California, as shown on the Tax Map of said County as Tax Parcel Number 173-153-009, being further described in the instrument recorded in County of Riverside Official Records on April 30, 2018 at Instruments #2018-0166353 and 2018-0166354, a copy of said instrument being attached hereto as **Exhibit "A"**.

"Non-Defaulting Party" means the party to this Agreement that has not defaulted as provided for in Section 28 of this Agreement.

"Option" means the exclusive right granted to Lessee by Lessor to lease the Leased Premises pursuant to Section 2 of this Agreement.

"Option Fee" means the sum of Ten Thousand and 00/100 Dollars ($10,000.00).

"Option Period" means the period commencing on the date of this Agreement and expiring on August 31, 2018, as it may be extended from time to time.

"Rent" means the consideration payable by Lessee to Lessor in exchange for the Leased Premises in the amount of Forty-Two Thousand and 00/100 Dollars ($42,000.00) per year to be paid in equal monthly installments of Three Thousand Five Hundred and 00/100 Dollars ($3,500.00). After the first year of the Lease Term and every year on the anniversary of the Commencement Date thereafter (the "Adjustment Date"), the Rent shall increase by an amount equal to four percent (4%) of the monthly rent in effect for the month immediately preceding the Adjustment Date.

"Title Company" means Linear Title Company of California or any title company licensed or authorized to do business in the State of California as may be designated upon notice to Lessor.



**2. Grant of Option to Lease.** In consideration of the Option Fee paid by Lessee to Lessor upon Lessee's execution of this Agreement, Lessor hereby grants to Lessee the Option during the Option Period to lease, on the terms and conditions set forth in this Agreement, the Leased Premises. Crown shall designate and appoint a Title Company to assume any duties and responsibilities as directed by Crown to consummate the transfer of the option interests set forth in this Agreement ("Transaction"), including, without limitation acting as escrow agent in connection with the collection, handling and transfer of the Option Fee and any other funds, collecting this Agreement and any other applicable documents, recording any applicable documents, and preparing and collecting any other documentation reasonably required by the Title Company to consummate the Transaction. Crown shall bear the sole cost and expense of all standard closing costs for the Transaction, including but not limited to (i) any costs to obtain an owner's title insurance commitment, title policy, (ii) any costs to obtain a revised survey of the Leased Premises, (iii) recording fees (including any transfer fees or stamp tax), and (iv) any escrow fees charged by the Title Company.

**3. Due Diligence Investigation.**

(A) Inspection Rights. During the Option Period, Lessee shall have the right to analyze the suitability of the Leased Premises for its intended use. Lessee and its employees, agents, contractors, engineers, and surveyors shall have the right to enter upon Lessor's Property to inspect, conduct, perform and examine soil borings, drainage testing, material sampling, surveys and other geological or engineering tests or studies of Lessor's Property, to apply for and obtain all licenses and permits required for Lessee's use of the Leased Premises from all applicable governmental or regulatory entities, and to do those things on or off Lessor's Property that, in the sole opinion of Lessee, are necessary to determine the physical condition of Lessor's Property, the environmental history of Lessor's Property, Lessor's title to Lessor's Property and the feasibility or suitability of the Leased Premises for Lessee's use as defined in this Agreement, all at Lessee's expense (the "Due Diligence Investigation"). Activities conducted in connection with Lessee's Due Diligence Investigation shall not be deemed to constitute exercise of the Option or commencement of construction of the Improvements. Following completion of the Due Diligence Investigation, Lessee agrees to promptly restore the Lessor's Property as nearly as reasonably possible to its original condition prior to the Due Diligence Investigation, reasonable wear and tear excepted.

(B) Temporary Access Road and Easement for Due Diligence Investigation. To facilitate Lessee's Due Diligence Investigation, Lessor hereby grants Lessee and its employees, agents, contractors, engineers and surveyors the right and an easement to construct and use a temporary pedestrian and vehicular access roadway from a public road, across Lessor's Property, to the Leased Premises. The location of said temporary pedestrian and vehicular access roadway on Lessor's Property is shown on **Exhibit "B"**. Such construction shall not be deemed to constitute exercise of the Option or commencement of construction of the Improvements.

**4. Termination and Exercise of Option.**

(A) Right to Terminate Option. Lessee shall have the right to terminate this Agreement at any time prior to the expiration of the Option Period or any extension thereof by sending written notice of termination to Lessor.

(B) Expiration of Option Term; Exercise of Option. If, upon expiration of the Option Period (as it may have been extended) Lessee has not exercised the Option, this Agreement shall terminate. Upon such termination, neither party shall have any further rights or duties hereunder. Lessor shall retain the Option Fee previously paid. Prior to expiration of the Option Period (as it may have been extended) Lessee may exercise the Option by either (i) providing written notice to Lessor of such exercise or (ii) commencing construction of the Improvements. Upon the Commencement Date, the Lease Term shall commence and the Easements shall become effective.

**5. Lessor's Cooperation.** During the Option Period and the Lease Term, Lessor shall: (i) cooperate with Lessee in its efforts to perform its Due Diligence Investigation and to obtain all of the Approvals, including all appeals; and (ii) take no action that would adversely affect the Leased Premises. Lessor acknowledges that Lessee's ability to use the Leased Premises is contingent upon Lessee obtaining and maintaining the Approvals. Additionally, Lessor grants to Lessee and its employees, representatives, agents, and consultants a limited power of attorney to prepare, execute, submit, file and present on behalf of Lessor building, permitting, zoning or land-use applications with the appropriate local, state and/or federal agencies necessary to obtain land use changes, special exceptions, zoning variances, conditional use permits, special use permits, administrative permits, construction permits, operation permits and/or building permits. Lessor understands that any such application and/or the satisfaction of any requirements thereof may require Lessor's cooperation, which Lessor hereby agrees to provide. Lessor shall not "knowingly" do or permit anything that will interfere with or negate any Approvals pertaining to the Improvements or Leased Premises or cause them to be in nonconformance with applicable local, state or federal laws. Lessor agrees to execute such documents as may be necessary to obtain and thereafter maintain the Approvals, and agrees to be named as the applicant for said Approvals.

**6. Lease Term.** Effective upon the Commencement Date, Lessor leases the Leased Premises to Lessee for the Lease Term.

**7. Rent.** Beginning on the Commencement Date, Lessee shall pay Rent for the Leased Premises.

**8. Leased Premises; Survey.** Following exercise of the Option and completion of construction of the wireless communications facility on the Leased Premises, Lessee shall provide Lessor with a copy of an "as-built" survey, which shall depict and identify the boundaries of the Leased Premises and the Easements, and replace and supersede the sketch attached hereto as **Exhibit "B"**. The "as-built" survey shall be deemed to be incorporated into this Agreement as **Exhibit "C"** even if not physically affixed hereto. The description of the Leased Premises set forth in **Exhibit "C"** shall control in the event of



discrepancies between **Exhibit "B"** and **Exhibit "C"**. Prior to commencing construction of the tower, Lessee shall obtain Lessor's approval of the tower design and survey, which approval shall not be unreasonably withheld, conditioned or delayed; provided the tower design is approved by the appropriate zoning and permitting agency governing the Leased Premises.

**9. Easements.** Conditioned upon and subject to commencement of the Lease Term Lessor grants the following easements and rights-of-way over, under and upon Lessor's Property to Lessee, and its successors and assigns,: (i) a non-exclusive thirty foot (30') wide easement in the location shown in **Exhibit "B"**, as may be amended by **Exhibit "C"**, for construction, use, maintenance and repair of an access road for ingress and egress and construction and maintenance purposes, including staging of vehicles and equipment, seven (7) days per week, twenty-four (24) hours per day, for pedestrians and all types of motor vehicles, to extend from the nearest public right-of-way to the Leased Premises; and (ii) a utility easement (the "Utility Easement") in the location shown in **Exhibit "B"**, as may be amended by **Exhibit "C"**, for the installation, repair, replacement and maintenance of utility wires, poles, cables, conduits and pipes; provided that in the event that any public utility is unable or unwilling to use the Utility Easement in the location shown in Exhibit "B", as may be amended by **Exhibit "C"**, at the sole option of Lessee Lessor shall grant an alternate easement either to Lessee or directly to the public utility at no cost and in a location acceptable to Lessee and the public utility (collectively, the "Easements"). TO HAVE AND TO HOLD the Easements for the purposes provided during the Lease Term and thereafter for a reasonable period of time for Lessee to remove its improvements.

**10. Lessee's Right to Terminate; Effect of Termination by Lessee.** Lessee shall have the right, following its exercise of the Option, to terminate this Agreement, at any time, without cause, by providing Lessor with one hundred eighty (180) days' prior written notice. Upon such termination, this Agreement shall become null and void and neither party shall have any further rights or duties hereunder, except that any monies owed by either party to the other up to the date of termination shall be paid within thirty (30) days of the termination date.

**11. Use of Property.** The Leased Premises and the Easements shall be used for the purpose of (i) constructing, maintaining and operating the Improvements and (ii) uses incidental thereto, including without limitation, testing of any kind by Lessee, its customers, or invitees. Lessee may place a security fence, around the perimeter of the Leased Premises. All Improvements shall be constructed at Lessee's sole expense. Lessee will maintain the Leased Premises in a safe condition. It is the intent of the parties that Lessee's wireless communications facility shall not constitute a fixture.

**12. Removal of Obstructions.** Lessee has the right to remove obstructions from Lessor's Property, including but not limited to vegetation, which may encroach upon, interfere with or present a hazard to Lessee's use of the Leased Premises or the Easements. Lessee shall dispose of any materials removed.

**13. Hazardous Materials.**

(A) *Lessee's Obligation and Indemnity.* Lessee shall not (either with or without negligence) cause or permit the escape, disposal or release of any Hazardous Materials on or from the Leased Premises in any manner prohibited by law. Lessee shall indemnify and hold Lessor harmless from any and all claims, damages, fines, judgments, penalties, costs, liabilities or losses (including, without limitation, any and all sums paid for settlement of claims, attorneys' fees, and consultants' and experts' fees) from the release of any Hazardous Materials on the Leased Premises if caused by Lessee or persons acting under Lessee.

(B) *Lessor's Obligation and Indemnity.* Lessor shall not (either with or without negligence) cause or permit the escape, disposal or release of any Hazardous Materials on or from Lessor's Property or Leased Premises in any manner prohibited by law. Lessor shall indemnify and hold Lessee harmless from any and all claims, damages, fines, judgments, penalties, costs, liabilities or losses (including, without limitation, any and all sums paid for settlement of claims, attorneys' fees, and consultants' and experts' fees) from the presence or release of any Hazardous Materials on Lessor's Property or Leased Premises unless caused by Lessee or persons acting under Lessee.

**14. Real Estate Taxes.** Lessor shall pay all real estate taxes on Lessor's Property. Lessee agrees to reimburse Lessor for any documented increase in real estate or personal property taxes levied against Lessor's Property that are directly attributable to the Improvements constructed by Lessee. Lessor agrees to provide Lessee any documentation evidencing the increase and how such increase is attributable to Lessee's use. Lessee reserves the right to challenge any such assessment, and Lessor agrees to cooperate with Lessee in connection with any such challenge.

**15. Insurance.** At all times during the performance of its Due Diligence Investigation and during the Lease Term, Lessee, at its sole expense, shall obtain and keep in force insurance which may be required by any federal, state or local statute or ordinance of any governmental body having jurisdiction in connection with the operation of Lessee's business upon the Leased Premises.

**16. Waiver of Claims and Rights of Subrogation.** The parties hereby waive any and all rights of action for negligence against the other on account of damage to the Improvements, Lessor's Property or to the Leased Premises resulting from any fire or other casualty of the kind covered by property insurance policies with extended coverage, regardless of whether or not, or in what amount, such insurance is carried by the parties. All policies of property insurance carried by either party for the Improvements, Lessor's Property or the Leased Premises shall include a clause or endorsement denying to the insurer rights by way of subrogation against the other party to the extent rights have been waived by the insured before the occurrence of injury or loss.

**17. Eminent Domain.** If Lessor receives notice of a proposed taking by eminent domain of any part of the Leased Premises or the Easements, Lessor will notify Lessee of the proposed taking within five (5) days of receiving said notice and Lessee will have



the option to: (i) declare this Agreement null and void and thereafter neither party will have any liability or obligation hereunder; or (ii) remain in possession of that portion of the Leased Premises and Easements that will not be taken, in which event there shall be an equitable adjustment in Rent on account of the portion of the Leased Premises and Easements so taken. With either option Lessee shall have the right to contest the taking and directly pursue an award.

**18. Right of First Refusal.** If, during the Option Period or the Lease Term, Lessor receives an offer to purchase, make a loan, or give any consideration in exchange for any of the following interests in all or a portion of the Leased Premises: (i) fee title, (ii) a perpetual or other easement, (iii) a lease, (iv) any present or future possessory interest, (v) any or all portions of Lessor's interest in this Agreement including rent or (vi) an option to acquire any of the foregoing, Lessor shall provide written notice to Lessee of said offer ("Lessor's Notice"). Lessor's Notice shall include the prospective buyer's name, the purchase price being offered, and other consideration being offered, the other terms and conditions of the offer, the due diligence period, the proposed closing date and, if a portion of Lessor's Property is to be sold, a description of said portion. Lessee shall have a right of first refusal to purchase, at its election and on the terms and conditions as in Lessor's Notice a fee simple interest in Lessor's Property or Leased Premises or a perpetual easement for the Leased Premises. If the Lessor's Notice is for more than the Leased Premises and Lessee elects to purchase in fee or acquire a perpetual easement in only the Leased Premises, the terms and conditions of said acquisition shall be the same terms and conditions as in Lessor's Notice but the purchase price shall be pro-rated on an acreage basis. If Lessee does not exercise its right of first refusal by written notice to Lessor given within thirty (30) days, Lessor may sell the property described in the Lessor's Notice. If Lessee declines to exercise its right of first refusal, then this Agreement shall continue in full force and effect and Lessee's right of first refusal shall survive any such conveyance.

**19. Sale of Property.** If during the Option Period, as same may be extended, or Lease Term, Lessor sells all or part of Lessor's Property, of which the Leased Premises is a part, then such sale shall be under and subject to this Agreement.

**20. Surrender of Property.** Upon expiration or termination of this Agreement, Lessee shall, within a reasonable time, remove all above ground Improvements and below ground Improvements to a point three (3) feet below grade, and restore the Leased Premises as nearly as reasonably possible to its original condition, without, however, being required to replace any trees or other plants removed, or alter the then existing grading.

**21. Recording.** Lessee shall have the right to record a memorandum of the Option and a memorandum of this Agreement with the appropriate recording officer. Lessor shall execute and deliver each such memorandum, for no additional consideration, promptly upon Lessee's request.

**22. Hold Harmless.** Each party shall indemnify and defend the other party against, and hold the other party harmless from, any claim of liability or loss from personal injury or property damage

arising from the use and occupancy of the Leased Premises or Lessor's Property by such indemnifying party, its employees, contractors, servants or agents, except to the extent such claims are caused by the intentional misconduct or negligent acts or omissions of the other party, its employees, contractors, servants or agents.

**23. Lessor's Covenant of Title.** Lessor covenants that Lessor holds good and marketable fee simple title to Lessor's Property and the Leased Premises and has full authority to enter into and execute this Agreement. Lessor further covenants that there are no encumbrances or other impediments of title that might interfere with or be adverse to Lessee.

**24. Interference with Lessee's Business.** Lessee shall have the exclusive right to construct, install and operate wireless communications facilities that emit radio frequencies on Lessor's Property. Lessor agrees that it will not permit the construction, installation or operation on Lessor's Property of (i) any additional wireless communications facilities or (ii) any equipment or device that interferes with Lessee's use of the Leased Premises for a wireless communications facility. Each of the covenants made by Lessor in this Section is a covenant running with the land for the benefit of the Leased Premises.

**25. Quiet Enjoyment.** Lessor covenants that Lessee, on paying Rent and performing the covenants of this Agreement, shall peaceably and quietly have, hold and enjoy the Leased Premises and Easements.

**26. Mortgages.** This Agreement, Lessee's leasehold interest and the Easements shall be subordinate to any mortgage given by Lessor which currently encumbers the Leased Premises, provided that any mortgagee shall recognize the validity of this Agreement in the event of foreclosure. In the event that the Leased Premises is or shall be encumbered by such a mortgage, Lessor shall obtain and furnish to Lessee a non-disturbance agreement for each such mortgage, in recordable form. If Lessor fails to provide any non-disturbance agreement Lessee, may withhold and accrue, without interest, the Rent until such time as Lessee receives all such documentation.

**27. Title Insurance.** Lessee, at Lessee's option, may obtain title insurance on the Leased Premises and Easements. Lessor shall cooperate with Lessee's efforts to obtain title insurance by executing documents or obtaining requested documentation as required by the title insurance company. If Lessor fails to provide the requested documentation within thirty (30) days of Lessee's request, or fails to provide any non-disturbance agreement required in the preceding Section of this Agreement, Lessee, at Lessee's option, may withhold and accrue, without interest, the Rent until such time as Lessee receives all such documentation.

**28. Default.**

(A) Notice of Default; Cure Period. In the event that there is a default by Lessor or Lessee (the "Defaulting Party") with respect to any of the provisions of this Agreement or Lessor's or Lessee's obligations under this Agreement, the other party (the "Non-Defaulting Party") shall give the Defaulting Party written notice of such default. After receipt of such written notice, the



Defaulting Party shall have thirty (30) days in which to cure any monetary default and sixty (60) days in which to cure any non-monetary default. The Defaulting Party shall have such extended periods as may be required beyond the sixty (60) day cure period to cure any non-monetary default if the nature of the cure is such that it reasonably requires more than sixty (60) days to cure, and Defaulting Party commences the cure within the sixty (60) day period and thereafter continuously and diligently pursues the cure to completion. The Non-Defaulting Party may not maintain any action or effect any remedies for default against the Defaulting Party unless and until the Defaulting Party has failed to cure the same within the time periods provided in this Section.

(B) <u>Consequences of Lessee's Default.</u>   Lessor acknowledges that under the terms of this Agreement, Lessee has the right to terminate this Agreement at any time upon one hundred eighty (180) days' notice. Accordingly, in the event that Lessor maintains any action or effects any remedies for default against Lessee, resulting in Lessee's dispossession or removal, (i) the Rent shall be paid up to the date of such dispossession or removal and (ii) Lessor shall be entitled to recover from Lessee, in lieu of any other damages, as liquidated, final damages, a sum equal to six months' Rent. In no event shall Lessee be liable to Lessor for consequential, indirect, speculative or punitive damages in connection with or arising out of any default.

(C) <u>Consequences of Lessor's Default.</u>   In the event that Lessor is in default beyond the applicable periods set forth above, Lessee may, at its option, upon written notice: (i) terminate this Agreement, vacate the Leased Premises and be relieved from all further obligations under this Agreement; (ii) perform the obligation(s) of Lessor specified in such notice, in which case any expenditures reasonably made by Lessee in so doing shall be deemed paid for the account of Lessor and Lessor agrees to reimburse Lessee for said expenditures upon demand; (iii) take any actions that are consistent with Lessee's rights; (iv) sue for injunctive relief, and/or sue for specific performance, and/or sue for damages, and/or set-off from Rent any amount reasonably expended by Lessee as a result of such default.

**29.  <u>Limitation on Damages.</u>** In no event shall Lessee be liable to Lessor for consequential, indirect, speculative or punitive damages in connection with or arising from this Agreement, or the use of the Leased Premises, Easements, and/or Utility Easement.

**30.  <u>Lessor's Waiver.</u>** Lessor hereby waives and releases any and all liens, whether statutory or under common law, with respect to any of Lessee's Improvements now or hereafter located on the Leased Premises.

**31.  <u>Applicable Law.</u>** This Agreement and the performance thereof shall be governed, interpreted, construed and regulated by the laws of the State where the Leased Premises is located. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be decided by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on any award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

**32.  <u>Assignment, Sublease, Licensing and Encumbrance.</u>** Lessee has the right, at its sole discretion, to assign its interest in this Agreement and to sublease or license use of the Leased Premises, Easements and Improvements. Assignment of this Agreement by Lessee shall be effective upon Lessee sending written notice to Lessor and shall relieve Lessee from any further liability or obligation. Lessee has the further right to pledge or encumber its interest in this Agreement. Upon request to Lessor from any leasehold mortgagee, Lessor agrees to give the holder of such leasehold mortgage written notice of any default by Lessee and an opportunity to cure any such default within fifteen (15) days after such notice with respect to monetary defaults and within a commercially reasonable period of time after such notice with respect to any non-monetary default.

**33.  <u>Billboard Modification.</u>** In the event Lessor must increase the height of its existing billboard ("Billboard Modification") due to the construction of Lessee's tower, Lessee will reimburse Lessor for up to Twenty-Five Thousand and 00/100 Dollars ($25,000.00) of Lessor's actual costs for the Billboard Modification, provided Lessor submits to Lessee supporting documentation evidencing that the Billboard Modification is reasonably necessary due to construction of Lessee's tower along with a cost estimate for Lessee's approval prior to commencing the Billboard Modification. Lessee will reimburse Lessor for such approved costs within thirty (30) days following receipt of written notice from Lessor that the Billboard Modification has been completed.

**34.  <u>Miscellaneous</u>.**

(A) <u>Entire Agreement</u>. Lessor and Lessee agree that this Agreement contains all of the agreements, promises and understandings between Lessor and Lessee. No oral agreements, promises or understandings shall be binding upon either Lessor or Lessee in any dispute, controversy or proceeding at law. Any addition, variation or modification to this Agreement shall be void and ineffective unless made in writing and signed by the parties hereto. The terms, covenants and provisions of this Agreement shall extend to and be binding upon the respective executors, administrators, heirs, successors and assigns of Lessor and Lessee.

(B) <u>Captions</u>. The captions preceding the Sections of this Agreement are intended only for convenience of reference and in no way define, limit or describe the scope of this Agreement or the intent of any provision hereof.

(C) <u>Construction of Document</u>.   Lessor and Lessee acknowledge that this document shall not be construed in favor of or against the drafter by virtue of said party being the drafter and that this Agreement shall not be construed as a binding offer until signed by Lessee.

(D) <u>Notices</u>. All notices hereunder shall be in writing and shall be given by (i) established national courier service which maintains delivery records, (ii) hand delivery, or (iii) certified or registered mail, postage prepaid, return receipt requested. Notices are effective upon receipt, or upon attempted delivery if delivery is refused or if delivery is impossible because of failure to provide reasonable means for accomplishing delivery. The



notices shall be sent to Lessor at Lessor's Notice Address and to Lessee at Lessee's Notice Address.

(E) Partial Invalidity. If any term of this Agreement is found to be void or invalid, then such invalidity shall not affect the remaining terms of this Agreement, which shall continue in full force and effect.

(F) IRS Form W-9. Lessor agrees to provide Lessee with a completed IRS Form W-9, or its equivalent, upon execution of this Agreement and at such other times as may be reasonably requested by Lessee. In the event the Lessor's Property is transferred, the succeeding Lessor shall have a duty at the time of such transfer to provide Lessee with a Change of Ownership Form as provided for by Lessee, a completed IRS Form W-9, or its equivalent, and other related paper work to effect a transfer in Rent to the new Lessor. Lessor's failure to provide the IRS Form W-9 within thirty (30) days after Lessee's request shall be considered a default and Lessee may take any reasonable action necessary to comply with IRS regulations including, but not limited to, withholding applicable taxes from Rent payments.

(G) Counterparts. This Agreement may be executed simultaneously or in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

*[Execution Page Follows]*



**IN WITNESS WHEREOF**, Lessor and Lessee having read the foregoing and intending to be legally bound hereby, have executed this Agreement as of the day and year this Agreement is fully executed.

LESSOR:
CIRCLE INN DEVELOPMENT & MANAGEMENT, INC.,
a California corporation,
as to an undivided one-half interest; and

NATIONAL ASSOCIATION OF REAL ESTATE SALES PEOPLE,
a California corporation,
as to an undivided one-half interest

By: _____
Print Name: _____
Print Title: _____
Of: Circle Inn Development & Management, Inc.
Date: _____

By: _____
Print Name: _____
Print Title: _____
Of: National Association of Real Estate Sales People
Date: _____

LESSEE:
GLOBAL SIGNAL ACQUISITIONS IV LLC,
a Delaware limited liability company

By: _____
Print Name: Matthew Norwood
Print Title: Senior Transaction Manager
Date: 05/31/18

EXHIBIT "A"
Lessor's Deeds

RECORDING REQUESTED BY:
DocStar Services, LLC.

MAIL TAX STATEMENTS AND
WHEN RECORDED MAIL TO:

Robert Fred Newsom, Jr.
Circle Inn Development &
Management Inc.
41396 Bitter Creek Court
Temecula, CA 92591

**2018-0166353**                                                  **823**

04/30/2018 03:49 PM Fee: $ 105.00
Page 1 of 3

Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

---

APN:      173-153-009-5

File No.:  17084-1 ELS

This Document has been recorded as an
Accommodation only. It has not be reviewed
as to its accuracy or its effect on title.

THE UNDERSIGNED GRANTOR(S) DECLARE(S):

TRA: 028-115

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

**QUITCLAIM DEED**

This conveyance changes the manner in
which title is held, grantor(s) and grantee(s)
remain the same and continue to hold the
same proportionate interest. R & T 11911.

DOCUMENTARY TRANSFER TAX IS $ 0.00           CITY TAX IS $ 0.00

____ Computed on full value of property conveyed, or

____ Computed on full value less liens and encumbrances remaining at time of sale.

____ Unincorporated area   ✓   City of Jurupa Valley

For valuable consideration, receipt of which is hereby acknowledged,

Robert Fred Newsom, Jr., Trustee, or Successor Trustees, of the Michael David Newsome
Revocable Living Trust dated November 21, 2002, as to an Undivided one-half Interest.

hereby REMISE, RELEASE AND FOREVER QUITCLAIM to

Circle Inn Development & Management Inc., a California Corporation

the following described property situated in the city of Jurupa Valley              , County of Riverside              ,
State of California              :

ALL OF THE GRANTOR'S UNDIVIDED ONE-HALF INTEREST IN AND TO THE FOLLOWING
PROPERTY:

Legal Description attached hereto as Exhibit "A" and made a part hereof.

Commonly Known As: Vacant Land, Riverside County, CA

MAIL TAX STATEMENTS AS DIRECTED ABOVE

Page 1 of 2

DOC #2018-0166353 Page 2 of 3

Dated: April 27, 2018

Michael David Newsome Revocable Living Trust
dated November 21, 2002

Robert Fred Newsom, Jr., Trustee

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ___California___ )
)§
COUNTY OF __Riverside__ )

On __April 30, 2018__ before me, __Ericka L. Simental__, Notary Public, personally appeared __Robert Fred Newsom, Jr.__ **************************************************************************************

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

Ericka L. Simental
COMM. #2207541
NOTARY PUBLIC - CALIFORNIA
RIVERSIDE COUNTY
My Comm. Expires Jul. 28, 2021

*This area for official notarial seal*

Page 2 of 2



DOC #2018-0166353  Page 3 of 3

# EXHIBIT "A"

Parcel 2 of Parcel Map 16845, in the County of Riverside, State of California, as per Map recorded in Book 121, Pages 69 and 70 of Parcel Maps, in the Office of the County Recorder of said County.

EXCEPT THAT PORTION EASTERLY OF THE FOLLOWING DESCRIBED LINE:

Commencing at the Northeast corner of Parcel 2; thence along the Northerly line of said Parcel 2, South 64 degrees 22' 33" West a distance of 36.72 feet to the true point of beginning; thence parallel with the Easterly line of said Parcel 2, South 0 degrees 18' 45" East a distance of 91.06 feet; thence South 89 degrees 41' 15" West a distance of 18.00 feet; thence parallel with the Easterly line of said Parcel 2, South 0 degrees 18' 45" East a distance of 83.77 feet to a point on the South line of Parcel 2; said point being distant North 90 degrees 44' 37" West 53.01 feet from the Southeast corner of Parcel 2, as set forth in Notice of Lot Line Adjustment recorded May 6, 1993 as Instrument No. 93-169592 of Official Records.

APN: 173-153-009-5

879842/9971/B                                          10                                          Exhibit "A"

RECORDING REQUESTED BY:

DocStar Services, LLC.

MAIL TAX STATEMENTS AND
WHEN RECORDED MAIL TO:

Robert Fred Newsom, Jr.
National Association of Real Estate
Sales People
41386 Bitter Creek Court
Temecula, CA 92591

**2018-0166354**

04/30/2018 03:49 PM Fee: $ 105.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

823

APN: 173-153-009-5
File No.: 17004-1ELS

This Document has been recorded as an
Accommodation only. It has not been reviewed
as to its accuracy or its effect on title

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

TRA: 028-115

**QUITCLAIM DEED**

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

This conveyance changes the manner in
which title is held, grantor(s) and grantee(s)
remain the same and continue to hold the
same proportionate interest, R & T 11911.

DOCUMENTARY TRANSFER TAX IS $ 0.00 _____ CITY TAX IS $ 0.00

_____ Computed on full value of property conveyed, or
_____ Computed on full value less liens and encumbrances remaining at time of sale.
_____ Unincorporated area   ✓  City of Jurupa Valley

For valuable consideration, receipt of which is hereby acknowledged,

Robert Fred Newsom, Jr. and Martha Consuelo Newsom, Trustees, or Successor Trustees, of the
Newsom Family Trust dated October 15, 2001, as to an Undivided one-half Interest.

hereby REMISE, RELEASE AND FOREVER QUITCLAIM to

National Association of Real Estate Sales People, a California Corporation

the following described property situated in the city of Jurupa Valley _____ , County of Riverside _____ ,
State of California _____ :

ALL OF THE GRANTOR'S UNDIVIDED ONE-HALF INTEREST IN AND TO THE FOLLOWING
PROPERTY:

Legal Description attached hereto as Exhibit "A" and made a part hereof.

Commonly Known As: Vacant Land, Riverside County, CA

MAIL TAX STATEMENTS AS DIRECTED ABOVE

Page 1 of 2

879842/9971/B

11

Exhibit "A"

DOC #2018-0156354 Page 2 of 3

Dated: April 27, 2018

Newsom Family Trust dated October 15, 2001

Robert Fred Newsom, Jr., Trustee

Martha Consuelo Newsom, Trustee

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ___California___        )
                                 ) §
COUNTY OF ___Riverside___        )

On _April 30, 2018_ before me, _Ericka L. Simental_, Notary Public, personally appeared _Robert Fred Newsom, Jr. and Martha Consuelo Newsom_**************************************** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

Ericka L. Simental
COMM. #2207541
NOTARY PUBLIC · CALIFORNIA
RIVERSIDE COUNTY
My Comm. Expires Jul. 23, 2021

This area for official notarial seal

Page **2** of 2

DOC # 2019-0267431
07/18/2019 11:01 AM Fees: $98.00
Page 1 of 4
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

<u>WHEN RECORDED RETURN TO:</u>
Global Signal Acquisitions IV LLC
830906/Jurupa Circle
1220 Augusta, Suite 600
Houston, Texas 77057

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: ADRIENNE #823

Prepared by:
Parker Legal Group, PC
600 West Broadway, Suite 700
San Diego, CA 92101

Space above this line for Recorder's Use

A.P.N. 173-153-009       **Prior Recorded Document(s) in Riverside County, California:**
**Recorded on June 19, 2018, at #2018-0247134**

<u>NOTICE OF EXERCISE OF OPTION AND GROUND LEASE AGREEMENT</u>

GLOBAL SIGNAL ACQUISITIONS IV LLC, a Delaware limited liability company,
("Lessee"), having a mailing address of 2000 Corporate Drive, Canonsburg, Pennsylvania 15317,
hereby provides notice of its exercise of the option ("Option") set forth in that certain Option and
Ground Lease Agreement (as may be amended and/or assigned) (the "Agreement") by and
between CIRCLE INN DEVELOPMENT & MANAGEMENT, INC., a California corporation, as
to an undivided one-half interest; and NATIONAL ASSOCIATION OF REAL ESTATE SALES
PEOPLE, a California corporation, as to an undivided one-half interest, having a mailing address
of 41396 Bitter Creek Court, Temecula, California 92591-1545 C020 ("Lessor") and Lessee dated
May 31, 2018, a memorandum of which was recorded in the real property records of Riverside
County, California on June 19, 2018, at Instrument No. 2018-0247134, for the property described
on Exhibit B (the "Premises"), being a portion of the property described on Exhibit A (the
"Lessor's Property").

Documentary Transfer Tax $ 0.00
____ Computed on full value of property
____ Computed on full value less liens and encumbrances remaining at time of sale
____ Computed on full value of lease surpassing the 35-year term limit _____
____ Computed on leased area of the property
__X_ Exempt-remaining lease term with renewal options is 35 years or less
       Thrifty v. County of Los Angeles (1989) 210 Cal.App.3d 881

Signature of Declarant or agent

City of Jurupa Valley

Site Name: Jurupa Circle          1
BUN: 830906
Deal ID: 9970

The Option was duly exercised by Lessee on ___8·29·18___ pursuant to terms specified in the Agreement.  Accordingly, the Commencement Date of the Agreement shall be September 1, 2018.

In the event of any inconsistency between this Notice and the Agreement, the Agreement shall control.

The terms, covenants and provisions of the Agreement shall extend to and be binding upon the respective executors, administrators, heirs, successors and assigns of Lessor and Lessee.

This Notice does not contain the social security number of any person.

A copy of the Agreement is on file with Lessor and Lessee.

*[Execution Page Follows]*

**IN WITNESS WHEREOF,** hereunto and to duplicates hereof, Lessee has caused this Notice of Exercise of Option and Ground Lease Agreement to be duly executed on the ~~29~~ day of ~~AUGUST~~ , 20~~18~~.

LESSEE:
GLOBAL SIGNAL ACQUISITIONS IV LLC,
a Delaware limited liability company

By: _____

Print Name: Melanie Webb

Title: Senior Transaction Manager

State of Texas
County of ~~Harris~~

Before me, Rebecca Julie Byrne , a Notary Public, on this day personally appeared ~~Melanie Webb~~ , ~~Sr. Transaction Mgr.~~ of **GLOBAL SIGNAL ACQUISITIONS IV LLC,** known to me (or proved to me on the oath of ~~N/A~~ or through driver's license, state id card, resident id card, military id card, or passport) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she/he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ~~29~~ day of ~~AUGUST~~, 201~~8~~.

(Personalized Seal)

REBECCA JULIE BYRNE
Notary Public, State of Texas
Comm. Expires 01-23-2022
Notary ID 131419446

_____
Notary Public's Signature

## EXHIBIT A
### (Legal Description of Lessor's Property)

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF RIVERSIDE, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL 2 OF PARCEL MAP NO 16845 AS SHOWN BY MAP ON FILE IN BOOK 121 PAGE 70 OF PARCEL MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, EXCEPTING THAT PORTION EASTERLY OF THE FOLLOWING DESCRIBED LINE: COMMENCING AT THE NORTHEAST CORNER OF PARCEL 2; THENCE ALONG THE NORTHERLY LINE OF SAID PARCEL 2, SOUTH 64 DEGREES 2' 33" WEST A DISTANCE OF 38.72 FEET TO THE TRUE POINT OF BEGINNING; THENCE PARALLEL WITH THE EASTERLY LINE OF SAID PARCEL 2; SOUTH 0 DEGREES 18'45" EAST A DISTANCE OF 91.06 FEET; THENCE SOUTH 89 DEGREES 41'15" WEST A DISTANCE OF 18.00 FEET; THENCE PARALLEL WITH THE EASTERLY LINE OF SAID PARCEL 2, SOUTH 0 DEGREES 18'45" EAST A DISTANCE OF 83.77 FEET TO A POINT ON THE SOUTH LINE OF PARCEL 2; SAID POINT BEING DISTANT NORTH 89 DEGREES 44"37" WEST 53.01 FEET FROM THE SOUTHEAST CORNER OF PARCEL 2.

PARCEL ID#: 173-153-009

THIS BEING THE SAME PROPERTY CONVEYED TO CIRCLE INN DEVELOPMENT & MANAGEMENT, INC FROM ROBERT FRED NEWSOM, JR., TRUSTEE, OR SUCCESSOR TRUSTEES, OF THE MICHAEL DAVID NEWSOME REVOCABLE LIVING TRUST DATED NOVEMBER 21, 2002 IN A DEED DATED APRIL 27, 2018, RECORDED APRIL 30, 2018, AS INSTRUMENT NO. 2018-0166353.

THIS ALSO BEING A PORTION OF THE SAME PROPERTY CONVEYED TO NATIONAL ASSOCIATION OF REAL ESTATE SALES PEOPLE, A CORPORATION FROM ROBERT FRED NEWSOM, JR. AND MARTHA CONSUELO NEWSOM, TRUSTEES, OR SUCCESSOR TRUSTEES, OF THE NEWSOM FAMILY TRUST DATED OCTOBER 15, 2001 IN A DEED DATED APRIL 28, 2018, RECORDED APRIL 30, 2018, AS INSTRUMENT NO. 2018-0166354.

Site Name: Jurupa Circle
BUN: 830906
Deal ID: 9971

4

EXHIBIT B

----- Original Message -----

**From:** Henry, Grace

**To:** Robert ; igotnews4u@msn.com
**Cc:** Goetz, Rick
**Sent:** Saturday, July 28, 2018 10:30 AM
**Subject:** Update on the Lease

Good morning, Bob and Mike

—

Bob it was nice to speak with you yesterday. I wanted to follow up the phone call.
We will be filing for zoning within the next couple weeks. We will also be executing the lease at the end of August, so you two will be receiving the rent check starting in September.

If you have any questions, please let me know.

I hope you both have a good weekend!

Thank you,

**GRACE HENRY**
Urban Planner – Strategic Relocation
T: (713) 570-3829 | M: (281) 352-0543
CROWN CASTLE
1220 Augusta, Suite #500 Houston, TX  77057 Crowncastle.com



*The contents of this email and any attachments are confidential and proprietary. If you are not the addressee of this email, you may not copy, forward, disclose, or otherwise use any part of it.  If you have received this email in error, please email the author and delete any copies of this email including attachments.*

This email may contain confidential or privileged material. Use or disclosure of it by anyone other than the recipient is unauthorized. If you are not an intended recipient, please delete this email.

# EXHIBIT C

----- Original Message -----

**From:** Henry, Grace

**To:** Robert
**Cc:** Ruiz, Edward
**Sent:** Tuesday, November 5, 2019 2:41 PM
**Subject:** Crown Castle BUN 879842 Circle Inn

Hi, Bob—

I hope you are doing well! I spoke with Rick, and he received your voicemail. He is in meetings all day, so I wanted to reach out to you about your inquiry.

As we discussed, Crown has to run through due diligence processes before any construction can occur. We are currently working through our regulatory/environmental studies.

In regards to your escalation inquiry, I am looking into when you should expect to see the annual escalation increase. I will let you know as soon as I hear back from our internal team that is involved with rent escalations.

I will follow up when I have further information for you.

Thank you!

**GRACE HENRY**
Site Acquisition Specialist – Strategic Relocation
T: (713) 570-3829 | M: (281) 352-0543

**CROWN CASTLE**
1220 Augusta, Suite #300 Houston, TX  77057
Crowncastle.com



*The contents of this email and any attachments are confidential and proprietary. If you are not the addressee of this email, you may not copy, forward, disclose, or otherwise use any part of it.  If you have received this email in error, please email the author and delete any copies of this email including attachments.*

This email may contain confidential or privileged material. Use or disclosure of it by anyone other than the recipient is unauthorized. If you are not an intended recipient, please delete this email.

**CERTIFICATE OF SERVICE**

This Certificate of Service is made in compliance with Local Rule 5.1.2 and Civ.R.5(b). I am employed in the County of San Bernardino, State of California. I am over the age of 18 and not a party to the within action. My business address is 3800 Concours St., Ste. 300 Ontario, CA 91764.

On the date indicated below, a true and correct copy of the foregoing **PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT** filed with Court and served electronically and will be available for viewing and downloading from the Court's CM/ECF system:

The Notice of Electronic Case Filing automatically generated by the system and sent to all parties entitled to service under the Federal Rules of Civil Procedure and the Local Rules of the Central District of California who have consented to electronic service shall constitute service of the filed document to all such parties.

Executed on, March 8, 2022, at Ontario, CA.

I declare under penalty of perjury that I am employed in the office of a member admitted to practice before the District Court for the Central District of California and ECF registered in this Court at whose direction the service was made and that the foregoing is true and correct.

By: */s/ James M. Blucker*

James M. Blucker