# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRCLE INN DEVELOPMENT AND MANAGEMENT, INC., a California corporation; and, NATIONAL ASSOCIATION OF REAL SALES PEOPLE, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>GLOBAL SIGNAL ACQUISITIONS IV LLC, a Delaware limited liability company; and, CROWN CASTLE TOWERS 06-2 LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 5:21-cv-02061-JWH-SHKx<br><br>**ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [ECF No. 31]** |

This lawsuit arises out of the termination of an agreement to install a wireless communications tower that never got built. It has morphed from a contract dispute to a tort action. Defendants Global Signal Acquisitions IV LLC and Crown Castle Towers 06-2 LLC have filed a motion for judgment on the pleadings.[1] The Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition,[2] the Court orders that the Motion is **GRANTED**, as set forth herein.

## I. BACKGROUND

### A. Factual Summary

In May 2018,[3] Plaintiffs Circle Inn Development & Management, Inc. and National Association of Real Sales People, Inc. signed an agreement through which, in exchange for monthly rent, Defendants could lease a portion of Plaintiffs' real property for up to 30 years in order to install and operate a wireless communications tower.[4] The Agreement was structured so that Defendants had an "option period" that ran until August 31, during which time Defendants could conduct due diligence, perform environmental assessments, and pull permits.[5] At that point, Defendants could exercise their option and consummate the lease, or Defendants could decline the option and lose a

---

[1] Defs.' Mot. for J. on the Pleadings under Fed. R. Civ. P. 12(c); Mem. of P. & A. (the "Motion") [ECF No. 31].

[2] The Court considered the following papers: (1) First Am. Compl. (the "Amended Complaint") [ECF No. 25]; (2) the Motion (including its attachments); (3) Pl.'s Opp'n to the Motion (the "Opposition") [ECF No. 33]; and (4) Defs.' Reply in Supp. of the Motion (the "Reply") [ECF No. 34].

[3] Unless otherwise indicated, all dates are in 2018.

[4] Amended Complaint ¶ 9; *see also id.*, Ex. A (the "Agreement") ¶¶ 1 & 2. Between them, Plaintiffs shared a 50/50 split interest in the lease agreement.

[5] Agreement ¶¶ 1 & 3(A).

nominal deposit.[6] But the Agreement also contained a provision that permitted Defendants to terminate the lease at any time—without cause, even after exercising the option—so long as Defendants removed any equipment and provided Plaintiffs with 180 days' notice.[7]

According to their Amended Complaint, Plaintiffs had long sought a long-term tenant to rent their property.[8] Accordingly, Plaintiffs were ecstatic when Defendants approached them with the prospect of a 30-year business relationship.[9] Under the terms of the Agreement, Plaintiffs would receive $42,000 a year in rent, with a 4% annual increase.[10]

On June 19, less than a month after executing the Agreement, Defendants exercised their option to lease Plaintiffs' real property by recording an appropriate notice thereof.[11] In July, one of Defendants' employees emailed Plaintiffs, informing Plaintiffs about Defendants' plans to seek zoning permits.[12] From Plaintiffs' point of view, it appeared that the project was progressing.

But after that correspondence, the project became dormant. Plaintiffs saw no work commence on their property.[13] Plaintiffs periodically contacted Defendants about the status of the work,[14] and a year later, in November 2019, Defendants told Plaintiffs that Defendants were still working through their

---

[6] *Id.* at ¶¶ 1, 2, & 4(B). The Agreement uses the term "Option Fee" for the deposit. *Id.* at ¶ 1.
[7] *Id.* at ¶¶ 10 & 12.
[8] Amended Complaint ¶ 10.
[9] *Id.*
[10] *Id.* at ¶ 17; Agreement ¶ 1.
[11] Amended Complaint ¶ 12.
[12] *Id.* at ¶ 13.
[13] *Id.* at ¶ 14.
[14] *Id.*

regulatory and environmental studies—a representation that Plaintiffs now contend was fabricated.[15]

In May 2021, two years after executing the Agreement, Defendants provided notice to Plaintiffs of Defendants' intent to terminate it.[16]  Forlorn, Plaintiffs now accuse Defendants of stringing them along in order to hold their property "hostage" while seeking out similar properties nearby to install the wireless tower.[17]

**B.  Procedural History**

Plaintiffs filed their initial Complaint in Riverside County Superior Court in October 2021.[18]  Plaintiffs asserted a claim for breach of contract and a claim for promissory fraud.[19]  Plaintiffs accomplished service a month later, and Defendants timely removed the case to this Court.[20]

In March 2022, in response to this Court's earlier order granting (with leave to amend) Defendants' Rule 12(c) motion,[21] Plaintiffs amended their pleading.[22]  Plaintiffs kept their breach of contract claim, and they replaced their claim for promissory fraud with six other claims:

- breach of the implied covenant of good faith and fair dealing;
- intentional misrepresentation;
- negligent misrepresentation;
- fraud and deceit;

---

[15]  *Id.* at ¶ 17.
[16]  *Id.* at ¶ 15.
[17]  *Id.* at ¶¶ 17, 48, & 57.
[18]  Notice of Removal Under 28 U.S.C. 1441(B) (Diversity) (the "Removal Notice") ¶ 1.
[19]  *See* Removal Notice, Ex. A (the "Complaint") [ECF No. 1-2] ¶¶ 10-24.
[20]  Removal Notice ¶¶ 22 & 27.
[21]  Order on Defs.' Mot. for J. on the Pleadings [ECF No. 22].
[22]  *See generally* Amended Complaint.

- unfair business competition; and
- negligence.[23]

Defendants moved again for judgment on the pleadings a month later,[24] and the matter is fully briefed.[25]

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that a party may move for judgment on the pleadings after the pleadings are closed, but before trial. Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate "when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Accordingly, a motion under Rule 12(c) tests the legal sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.* 637 F.3d 1047, 1063 n.4 (9th Cir. 2011). The analysis is "substantially identical" to that of a motion to dismiss under Rule 12(b)(6): a court must determine whether, crediting the factual allegations as true, the moving party is entitled to judgment as a matter of law. *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). The principal difference between the two motions is the timing of the filing. *See Dworkin v. Hustler Magazine*, 687 F.2d 1188, 1192 (9th Cir. 1989). Under both standards, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In other words, the complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct." *Id.* at 679.

Allegations of fraud require more detail. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

---

[23] *Id.* at ¶¶ 22-75.
[24] *See generally* Motion.
[25] *See generally* Opposition; Reply.

-5-

mistake." Fed. R. Civ. P. 9(b). Under this standard, the complaint "must identify the who, what, when, where and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (internal citations omitted).

## III. DISCUSSION

### A.  Breach of Contract

Plaintiffs' first claim for relief seeks damages arising from Defendants' breach of the Agreement.[26] Because the Agreement recites that it is to be governed "by the laws of the State where the Leased Premises is located," and those premises are located in Riverside County,[27] the Court applies California law to the Agreement. *See Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009).

Under California law, the elements of a claim for breach of contract are: "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages." *First Com. Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). Pleading a breach of contract claim additionally requires the plaintiff to plead the terms of the contract "either *in haec verba* or according to legal effect." *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252 (1989), *modified* (Dec. 7, 1989). The parties do not dispute that the copy of the Agreement that Plaintiffs appended to their Amended Complaint is true and correct, so this latter requirement is satisfied.

To determine whether Plaintiffs adequately allege Defendants' breach of the Agreement, the Court reviews the text of the Agreement and interprets its meaning. Under California law, "[a] contract must be so interpreted as to give

---

[26]  Amended Complaint ¶¶ 22-31.
[27]  Agreement ¶¶ 1 & 31.

effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. "When a contract is reduced to writing," as it is in this case, "the intention of the parties is to be ascertained from the writing alone, if possible." Cal. Civ. Code § 1639. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638.

"Interpretation of a contract is solely a question of law unless the interpretation turns upon the credibility of extrinsic evidence." *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 799 (1998). Parol evidence may be admitted to construe a written instrument when its language is ambiguous. *See Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992). The language of a contract is considered ambiguous if it is "reasonably susceptible" to more than one interpretation. *Id.* When the meaning of contractual language is disputed, the Court must engage in a two-step process to determine whether to admit extrinsic or parol evidence to show that an ambiguity exists and to resolve the ambiguity. *See id.* First, the court provisionally receives all credible evidence and determines whether the language is "reasonably susceptible" to the interpretation urged by a party. *Id.* If so, the extrinsic evidence is admitted to aid in the second step, which is the ultimate construction of the ambiguous language. *See id.* If no parol evidence can be introduced, or the evidence does not conflict, construction remains a question of law. *See id.* at 1166.

Proceeding with that analytical guide, the Court first determines if the Agreement is unambiguous. It is. Several provisions lie at the heart of this dispute. The first such provision is found under the subheading "10. Lessee's Right to Terminate; Effect of Termination by Lessee" ("Section 10"), which states:

> Lessee shall have the right, following its exercise of the Option, to terminate this Agreement, at any time, without cause, by providing

> Lessor with one hundred eighty (180) days' prior written notice. Upon such termination, this Agreement shall become null and void and neither party shall have any further rights or duties hereunder, except that any monies owed by either party to the other up to the date of termination shall be paid within thirty (30) days of the termination date.[28]

As lessees, Defendants contend that they could not have breached the contract, since this provision affords them the express right to terminate the lease.[29] Furthermore, Plaintiffs make no allegation that Defendants failed to provide notice,[30] failed to pay rent,[31] or otherwise failed to perform their end of the bargain as contemplated by the contract, with one exception: Defendants never built the wireless communication tower.[32] Under subheading "11. Use of Property" ("Section 11"), the Agreement states:

> The Leased Premises and the Easements shall be used for the purpose of (i) constructing, maintaining, and operating the Improvements and (ii) uses incidental thereto, including without limitation, testing of any kind by Lessee, its customers, or invitees.[33]

Plaintiffs argue that this provision imposes an affirmative obligation on Defendants to build the Improvements, defined as "a wireless communications facility, including tower structure, equipment shelters, meter boards and related improvements and structures and uses incidental thereto."[34]

---

[28] *Id.* at ¶ 10.
[29] Motion 3:23-4:10.
[30] *See* Amended Complaint ¶ 15 (alleging that Defendants filed a notice of termination letter).
[31] *See generally id.*
[32] *Id.* at ¶ 28.
[33] Agreement ¶ 11.
[34] *Id.* at ¶ 1.

Plaintiffs' argument fails for four reasons:

- The Agreement is crystal clear that Defendants have the "right" to terminate this Agreement, "at any time, without cause," by providing 180 days' notice. That language is absolute.

- In contrast, the text upon which Plaintiffs rely does not unequivocally imply an affirmative duty. Section 11 simply identifies the ***purposes*** for which the easements and the leased property may be used, as intended by the parties. For example, if Defendants erected a circus on the vacant lot rather than a wireless communications tower, that act would be incongruent with Section 11 of the Agreement.

- When Sections 10 and 11 are juxtaposed with one another, it becomes readily apparent that Plaintiffs' interpretation is unreasonable. Reading an affirmative duty to build the wireless tower into Section 11 would efface the absolute right to terminate the lease, as expressed mere lines above in Section 10. "[I]mplied terms cannot vary the express terms of a contract; if the defendant did what it was expressly given the right to do, there can be no breach." *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1120 (2008), *as modified on denial of reh'g* (June 4, 2008). Moreover, Plaintiffs' interpretation would manufacture ambiguity, since nothing in the Agreement sets a deadline by when (or under what conditions) a communications tower must be built.[35] Without those details, Plaintiffs' reading should be rejected since "a court cannot and should not do violence to the plain terms of a contract by artificially creating ambiguity where none exists." *Matsuo Yoshida v. Liberty Mut. Ins. Co.*, 240 F.2d 824, 826–27 (9th Cir. 1957).

---

[35] *See generally id.*

-9-

- Finally, to the extent that an affirmative duty does exist as some form of implied term, it should be excluded in view of the Agreement's explicit integration clause.[36] *See RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1148 (9th Cir. 2004).

Therefore, under the facts as Plaintiffs allege them, Plaintiffs cannot establish that Defendants breached the Agreement, so the Court **DISMISSES** Plaintiffs first claim for relief **without leave to amend**. Normally, a district court will "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). But here, leave to amend appears entirely futile since Plaintiffs have already amended their pleading once, and the terms of the Agreement will not change with further amendment. *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).

## B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs' second claim for relief is breach of the implied covenant of good faith and fair dealing.[37] "'There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1158 (9th Cir. 2002) (quoting *Comunale v. Traders & General Ins. Co.*, 50 Cal. 2d 654, 658 (1958)). While a breach of the implied covenant will always result in a breach of contract, the converse does not necessarily hold. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (1990).

"To state a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege: (1) the plaintiff and the defendant entered into a

---

[36] *See id.* at ¶ 34(A) (noting, *inter alia*, that "Lessor and Lessee agree that this Agreement contains all of the agreements, promises and understandings between Lessor and Lessee").

[37] Amended Complaint ¶¶ 32-41.

-10-

contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff." *Tolotti v. JPMorgan Chase & Co.*, 2015 WL 12830443, at *3 (C.D. Cal. Aug. 5, 2015) (internal citations omitted).

      As contemplated by the Agreement, Plaintiffs received rent in exchange for leasing their property to Defendants.[38] Nothing in the pleading suggests that Plaintiffs did not receive that benefit.[39] Instead, Plaintiffs point to the remarks of one of Defendants' employees (who said that Defendants were planning to apply for zoning permits, despite allegedly intending nothing of the sort) as evidence that Defendants acted in bad faith.[40] But even assuming that Defendants' employee flat out lied, that allegation does not give rise to a breach of the implied covenant when those statements did not interfere with Plaintiffs' ability to receive the benefits of the bargain—*i.e.*, collecting rental payments.

      Plaintiffs also seem to believe that Defendants acted in bad faith by terminating the agreement, thereby depriving Plaintiffs "of what was supposed to be a 30-year term" business relationship.[41] But the ability to terminate the Agreement at any time was baked into the terms of the Agreement itself. Where the termination of the Agreement is "expressly permitted by the lease," Defendants' act of doing just that "can never violate an implied covenant of good faith and fair dealing." *Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 376 (1992). Therefore, the Court **DISMISSES**

---

[38] Agreement ¶¶ 1 & 2.
[39] *See generally* Amended Complaint.
[40] Opposition 13:25-14:19.
[41] Amended Complaint ¶ 39.

Plaintiffs' second claim for relief **with leave to amend**. Because Plaintiffs asserted this claim for the first time in their Amended Complaint, the Court finds it appropriate to grant leave to amend, in the event that Plaintiffs can allege other facts to show interference with a benefit of the contract.

### C. Intentional Misrepresentation

Plaintiffs' third claim seeks remedies for Defendants' alleged intentional misrepresentations.[42] Here, Plaintiffs point to the same statements made by one of Defendants' employees regarding the status of zoning permits and environmental assessments, which Plaintiffs allege were misleading and false.[43] But even when Plaintiffs' allegations are taken as true, they do not entitle Plaintiffs to relief, since those statements were made after the Agreement was executed.[44]

"The essential elements of a count for intentional misrepresentation are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230–31 (2013) (citing *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996)). Logically, reliance cannot be predicated on statements—even false ones—that occurred *after* the Agreement had been executed. Plaintiffs have their cause-and-effect backwards. To be actionable, the false statements must have been made before any inducement occurred.[45]

In Opposition, Plaintiffs claim that "the basis for them entering into the Agreement with Defendants was for them to lease the premises and construct

---

[42] *Id.* at ¶¶ 42-49.
[43] *See, e.g.*, *id.* at ¶¶ 43-48.
[44] Motion 12:5-18.
[45] *See, e.g.*, Opposition 15:24-27 (where Plaintiffs say that the fraud is "evidenced by Defendants' [*sic*] continuously mispresenting and concealing *from the moment the Agreement was signed* that Defendants never had any intention of constructing any Improvements") (emphasis added).

and operate a cell tower on the property of Plaintiffs, which would lead to a 30-year tenancy."[46] But that statement points to Plaintiffs' subjective motivations and expectations, not to any false statement that Defendants made *prior* to entering into the Agreement.

Plaintiffs also say that Defendants' beguiling reassurances induced them to refrain from declaring Defendants in default.[47] But that argument also fails, since a default can only occur when a provision of the Agreement, or an obligation of a party arising therefrom, is breached.[48] The only such breach that Plaintiffs allege—*i.e.*, that Defendants never managed to install a communications tower before terminating the lease—has no textual grounding in the Agreement itself, *see supra* Part III.A. In other words, Plaintiffs have not alleged any acts (so far) that would constitute default under the express terms of the Agreement. That finding also implies that there could be no *continued* inducement to keep the Agreement in place after it was signed, since the right to terminate the Agreement without cause was a right unilaterally vested in Defendants as lessees.[49]

Because Plaintiffs' Amended Complaint fails to identify any misrepresentations that Defendants made prior to the parties' execution of the Agreement—and, thus, the Amended Complaint does not adequately plead reliance—the Court **DISMISSES** Plaintiffs' third claim for relief **with leave to amend**.

---

[46] *Id.* at 15:22-24.

[47] *Id.* at 17:24-28.

[48] Agreement ¶ 28(A).

[49] *See id.* at ¶ 10; *see also* Opposition 17:13-15 (conceding that "Defendants are correct that the only way for Plaintiffs to terminate the Agreement was to declare that Defendants were in default").

### D. Negligent Misrepresentation and Fraud & Deceit

Like the prior claim, Plaintiffs' fourth and fifth claims for relief—negligent misrepresentation and fraud and deceit, respectively—suffer from the same flaw of inadequate reliance.[50]

"Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986). Similarly, the "elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar*, 12 Cal. 4th at 638 (internal quotations omitted). "California courts have *always* required plaintiffs in actions for deceit to plead and prove the common law element of actual reliance." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993) (emphasis added).

Whether Defendants' alleged misrepresentations were intentional or merely negligent, Plaintiffs fail to plead reliance adequately, as discussed *supra* in Part III.C.[51] That flaw equally short-circuits Plaintiffs' claim for relief under a theory of negligent misrepresentation or common law deceit. The Court therefore **DISMISSES** Plaintiffs' fourth and fifth claims for relief **with leave to amend**.

---

[50] Amended Complaint ¶¶ 49-54.
[51] *See generally id.*

-14-

E.  **Unfair Competition**

Plaintiffs' sixth claim for relief arises under § 17200 of California's Business and Professions Code,[52] which defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

Plaintiffs' Amended Complaint is remarkably threadbare. Plaintiffs offer no independent factual allegations in relation to their unfair competition claim.[53] They even fail to specify which aspect of Cal. Bus. & Prof. Code § 17200 they mean to invoke. Plaintiffs simply parrot the language of the statute, stating that:

> Defendant's [*sic*] conduct as alleged herein constitutes unlawful, unfair, or fraudulent business acts or practices in violation of California Business and Professions Code § 17200 et seq.[54]

Although it is well-established that Rule 9(b)'s heightened pleading standard applies to claims arising state law sounding in fraud, *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003), and Fed. R. Civ. P. 9(b)), the Court is not convinced that Plaintiffs' allegations even satisfy the threshold pleading standard under Rule 8(a)(2). *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Rule 8(a)(2) is meant to give the opposing party "fair notice" of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Here, the Amended Complaint fails to identify whether Plaintiffs believe that they are entitled to relief as a result of fraudulent business practices or unfair ones (or both). Importantly, "[e]ach prong of the UCL is a separate and distinct theory of liability." *Kearns*, 567 F.3d 1127. As such, both the Court

---

[52] *Id.* at ¶¶ 67-70.
[53] *See id.*
[54] *Id.* at ¶ 68.

-15-

and Defendants are left guessing which prong is at play[55] and what conduct maps back to it.[56]  Therefore, the Court **DISMISSES** Plaintiffs' sixth claim for relief **with leave to amend**.  *Accord Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1158 (E.D. Cal. 2010) (dismissing an unfair competition law claim with leave to amend where the complaint failed "to indicate which particular acts or practices Plaintiff [relied] upon to advance this claim").

F.   Negligence

Plaintiffs' seventh and final claim for relief is that of negligence.  However, this claim is also woefully underdeveloped.  Plaintiffs do little more than repeat the elements of negligence, which are (1) a legal duty to use due care; (2) a breach of such legal duty; and (3) the breach as the proximate or legal cause of the resulting injury.[57]  *See Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996).

In Opposition, Plaintiffs elaborate on their claim only marginally, clarifying that Defendants owed them a duty to act as reasonable businesspersons.[58]  However, Plaintiffs provide no apposite authority for that proposition.  Plaintiffs' brief cites *Ladd*, which is a case involving the duty of care of public officials to prevent prisoners from escaping.[59]  *Id*. at 918.  Plaintiffs also cite a California statute, which reads as follows:[60]

---

[55]   *See, e.g.*, Motion 15:4-25 (arguing against all permutations of a claim arising under Cal. Bus. & Prof. Code § 17200).

[56]   It is no salve that Plaintiffs might have (or could have) cleared up the confusion in their Opposition.  Rule 8 clearly applies to the ***pleadings***, not to a brief in opposition to a motion arising under Rule 12(b)(6) or Rule 12(c).  *See* Fed. R. Civ. P. 8.

[57]   Amended Complaint ¶¶ 71-75.

[58]   Opposition 22:4-7.

[59]   *Id*. at 22:3-4.

[60]   *Id*. at 22:3.

> Everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

Cal. Civ. Code § 1714(a). Nowhere does the text of that statute refer to injury occasioned to another by his or her want of *business* skills. Neither *Ladd* nor any other case of which the Court is aware construes that statute to apply to allegedly subpar business skills. Accordingly, Plaintiffs have not pleaded, with sufficient factual matter, a claim that is plausible on its face. *See Iqbal*, 556 U.S. at 678. The Court **DISMISSES** Plaintiffs' seventh claim for relief **with leave to amend**.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. The Motion is **GRANTED** in that:

    a. Plaintiffs' first claim for relief is **DISMISSED without leave to amend**; and

    b. Plaintiffs' remaining claims are **DISMISSED with leave to amend**.

2. Plaintiffs are **DIRECTED** to file an amended pleading, if at all, no later than July 1, 2022. If Plaintiffs choose to file an amended pleading, then they are also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to First Amended Complaint that provides the Court with a redline version that shows the amendments. If Plaintiffs fail to file their amended pleading by July 1, 2022, then the Court will **DISMISS** Plaintiffs' remaining claims for relief **with prejudice**.

3. Defendants are **DIRECTED** to file a response to Plaintiffs' amended pleading no later than July 22, 2022.

**IT IS SO ORDERED.**

Dated: June 14, 2022

John W. Holcomb
UNITED STATES DISTRICT JUDGE